Sean V. WOODARD, Plaintiff,

v.

UNION PACIFIC RAILROAD
COMPANY, et al.,
Defendants.

No. 01–3147.

United States District Court,
S.D. Texas.

Jan. 31, 2002.

Sean V. Woodard, Houston, TX, Pro Se.

Linda Cooper Schoonmaker, Houston, TX, for Defendant Union Pacific.

Michael S. Wolly, Washington, DC, Patrick M. Flynn, Houston, TX, for Int'l Brotherhood of Electrical Workers.

### Opinion

HUGHES, District Judge.

**1.** *Introduction.*

Sean V. Woodard, an electrician, sues for being fired by the Union Pacific Railroad Company. His complaints have no merit.

**2.** *Railway Labor Act.*

■ Woodard, a union member, was under the collective bargaining agreement with Union Pacific, his employer. He complains about the outcome of the arbitration of his claims under the Railway Labor Act. Judicial review is very limited.

Designed to promote uniform, prompt, and inexpensive settlements of labor disputes, the act set up a detailed administrative system to resolve employee complaints like Woodard's. 45 U.S.C. § 151. When a dispute under the collective bargaining agreement arises, the employer, union, and employee try to solve the problem. If they fail, they must arbitrate before a public law board. To meet the act's goals—speed and uniformity—the board's decisions are "final and binding." 45 U.S.C. § 153, subd. 1(m). The statutory system protects the interest of the employer, union, employee, and the public in the resolution of workplace conflicts, and it precludes routine resort to other statutes and general law.

Complaining of the board's decision and "unlawful employment practices," Woodard asks the court to substitute its judgment for the board's. It cannot. Arbitration decisions may be reviewed only on a limited number of grounds, none of which Woodard claims. His complaints must be dismissed.

To be thorough, the court will address the merits of Woodard's claims.

**3.** *Background.*

Woodard was an electrician for the Union Pacific Railroad for over three years. While employed, he was a member of a local union of the International Brotherhood of Electrical Workers. In July 1998, he was disciplined for missing work and sleeping on the job. He waived his right to an investigation; the union did not appeal. After a hearing in August 1999, Woodard was disciplined for missing work and not following orders. Also, because of an accident he caused, he was told to take a class about safety. He did not.

In September 1999, Union Pacific told Woodard it was investigating his failure to take the safety class. In October, it also began investigating his absenteeism. Two hearings were held in October; Woodard—who chose not to attend—was represented by the union steward. Both charges were confirmed, and he was fired in November.

The union appealed the decisions, asking that Woodard be reinstated. The railroad refused. The union then forwarded the matter to its general chairman who appealed both claims to the railroad's director of labor relations. They were denied in August 2000. The union met with the director, asking him unsuccessfully to reconsider the decision.

In March 2001, under the collective bargaining agreement, the dispute was submitted to arbitration before a public law board. The union argued that the railroad violated Woodard's due process rights, holding hearings when it knew Woodard was unable to attend. Woodard spoke to the board, claiming that on-the-job stress made him miss work frequently.

The board rejected Woodard's arguments, finding no merit in his due process arguments and concluding that he had not shown that he was denied fair hearings. It upheld the railroad's decision to fire him.

In September 2001, Woodard sued the railroad and the union, claiming that (a) the railroad breached the collective bargaining agreement by denying him fair and impartial hearings, (b) it violated his rights under the Family Medical Leave Act, (c) the union did not fairly represent him during the hearings, and (d) the union and the railroad discriminated against him because he is black.

The union moves for summary judgment and the railroad moves to dismiss. The railroad's motion will be treated as a motion for summary judgment.

### 4. *Claims.*

█ Unhappy with the arbitration decision by the public law board, Woodard asks the court to set it aside. It will not. The board's decision may be overturned only if (a) it did not follow the Railway Labor Act, (b) it did not stay within its jurisdiction, (c) the process was corrupt, or (d) the proceeding was otherwise irreparably truncated. *Brotherhood of R.R. Trainmen v. Central of Georgia Ry. Co.*, 415 F.2d 403, 410–11 (5th Cir.1969). Because there is no evidence of these things, the board's decision will stand.

### A. *The Railroad.*

Woodard says that the railroad denied him fair hearings, breaching its collective bargaining agreement with the union. He claims that the railroad never told him when and where the hearings would be or what the charges were. He is wrong. The record contains copies of Union Pacific letters mailed to Woodard—certified, return receipt requested—describing the rules he was accused of violating, notifying him of investigations, giving the date, time, and place for each hearing, and advising him of disciplinary actions. These letters were also sent to the union steward. Woodard acknowledged receiving at least one letter during a hearing in August 1999.

█ Woodard also says the railroad violated the collective bargaining agreement when it held hearings in October 1999 without him. It did not. The union may represent members charged with employment violations. That is what happened here—the union steward showed up for the hearings; Woodard did not.

█ Woodard also claims that the railroad retaliated against him for exercising his rights under the Family Medical Leave Act. Nothing in the record supports his claim that he asked for medical leave, much less that Union Pacific retaliated against him. There were no verbal or written requests for leave, only belated explanations of dental work and stress. Sliding a doctor's note under the manager's door days later to explain a week's worth of absences is a belated excuse, not a request under the act.

Union Pacific also had no reason to think that Woodard needed medical leave or had a serious medical condition. Its response to Woodard's unexplained ab-

sences was reasonable: it told Woodard that he was charged with missing work and sleeping at work, that it would investigate the charges, and that he had the right to a hearing with union representation. He was disciplined for being an irresponsible employee, not for claimed health problems. Everything indicates that an aversion to work—not his health—kept Woodard away from his job and led to his being fired.

### B. *The Union.*

Woodard complains about the union's representation of him during the October 1999 hearings. The record shows that the union did everything it could to help Woodard, despite his lack of cooperation and his having done the predicate acts. Woodard never responded to the steward's requests for information about the charges and did not show for the hearings. The steward presented the best defense he could, even delaying one hearing to find Woodard.

■ Woodard claims that the steward testified against him at those hearings, telling the railroad that Woodard had not spoken to him, had not helped prepare a defense, and did not tell him that he would not attend the hearings. The steward simply told the truth; there is no evidence that he was hostile toward Woodard. Woodard was fairly represented.

■ Woodard also claims that the union—and the railroad—discriminated against him because he is black, treating whites better. He cannot support his claims; he fails to identify even one white railroad worker who violated company rules and was not fired. He also cannot name a white union member who was similarly-situated but treated better by the union. Indeed, the union's general chairman, who represented Woodard before the public law board, was unaware of Woodard's race, having only corresponded with

him. Not only does the record lack evidence of race discrimination, his pleadings lack allegations of facts.

■ Woodard says that he needs to do more discovery before he can identify whites who were treated better. He should know who was treated better than him, and he has to know—not assume—facts before making the claim. This claim, like the rest of his complaint, has no basis in fact; it will not survive the railroad and the union's motions for summary judgment.

### 5. *Conclusion.*

The public law board's decision of March 27, 2001, will stand. The motions for summary judgment will be granted. Sean V. Woodard will take nothing from the Union Pacific Railroad Company and the International Brotherhood of Electrical Workers.

### Final Judgment

Sean V. Woodard takes nothing from Union Pacific Railroad Company and the International Brotherhood of Electrical Workers (4, 12).